IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA

V.                                          NO. 4:16-CR-00113

JOHNNY LEE BOOKER

**MEMORANDUM OPINION AND ORDER**

Based on an investigation prompted by an anonymous call, Johnny Lee Booker was indicted of the crime of possessing a firearm as a convicted felon. Seeking to suppress the gun on which his indictment is premised, Booker argues that law enforcement officers lacked reasonable suspicion to make a *Terry* stop. Because the seizure of the gun from Booker was, at the least, based on information obtained during a consensual encounter and, at the most, based on a valid *Terry* stop, suppression will be denied.

**I
Factual Background**[1]

In the afternoon of September 16, 2016, Ricky Bridges, a captain in the Clarksdale Police Department's Narcotics Division, received an anonymous telephone call on his cellular phone from an unknown number.[2] The caller said that Johnny Lee Booker was carrying a gun in the barbershop at "Jay's Market ... in his White Suburban." Captain Bridges, who knew Booker from past investigations, drove with Sergeant Gary Smith and Corporal Myette Dawson to Jay's Market to investigate the anonymous tip.

---

[1] The factual background is based on the Court's consideration of the evidence presented at the hearing on the motion to suppress, including the Court's determination of the credibility of the witnesses called and all unrebutted testimony. In conducting a suppression hearing, a court is not bound by the Federal Rules of Evidence. Fed. R. Evid. 104(a); *see United States v. Posado*, 57 F.3d 428, 435 (5th Cir. 1995) ("We have consistently held that the rules of evidence are relaxed in pretrial suppression hearings.").

[2] According to Bridges, members of the Clarksdale Police Department provide their cellular phone numbers to members of the public. Bridges explained that it is common for members of the community to provide anonymous tips because "Clarksdale is sort of violent and we have had issues with informants getting hurt."

The officers drove to a point nearby where they could see the Suburban and "set up surveillance." While waiting there, Bridges, who knew Booker from previous investigations, called the Mississippi Department of Corrections ("MDOC") and confirmed his knowledge that Booker was a convicted felon.

The officers thereafter observed Booker leave the barbershop, enter his car, pull into a nearby gas station, and then enter the station store. Corporal Dawson approached the gas station store's entrance door and opened it. Dawson, who was also familiar with Booker, saw Booker and asked him "to come outside the store." Booker complied with this request.

"Immediately" after Booker exited the gas station, Captain Bridges asked Booker if he had any weapons on him. Booker stated that he did. Based on this admission, during what Bridges described as "a fairly pleasant conversation," Bridges retrieved and confiscated the gun from Booker.[3] While Bridges took the gun to his vehicle "to make it safe," Dawson and Smith searched Booker and retrieved an amount of cash. Booker was arrested on the scene for being a felon in possession of a firearm. During all events, the officers were not in uniform but in plain clothes, with their weapons and badges visible. The officers did not draw their weapons and did not make any violent physical contact with Booker.

## II
## Procedural History

On November 3, 2016, Booker was indicted on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2). Doc. #1. On November 30, 2016, Booker filed the instant motion to suppress the gun which is the subject of

---

[3] Bridges testified at hearing that Booker, in a nonthreatening way, "kind of reached in his waist band and said I'll get [the gun]" but Bridges told him he would get it. According to Bridges, he did so "for his safety and ours."

the indictment. Doc. #12. The Government responded in opposition to the motion on December 9, 2016. Doc. #14. Booker did not reply.

The Court convened an evidentiary hearing on the motion on December 20, 2016. Doc. #15. The Government called two witnesses—Captain Bridges and Corporal Dawson. Defendant called no witnesses but introduced into evidence without objection[4] a video of the encounter among Booker, Bridges and Dawson which occurred outside the gas station on September 16, 2016.

### III
### Standard of Review

"The proponent of a motion to suppress has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of his Fourth Amendment rights." *United States v. Iraheta*, 764 F.3d 455, 460 (5th Cir. 2014) (*quoting United States v. Kelley,* 981 F.2d 1464, 1467 (5th Cir. 1993)). Where, as here, evidence has been obtained through a warrantless search and seizure, "the government bears the burden of proving, by a preponderance of the evidence, that the search and seizure were constitutional." *United States v. McKinnon*, 681 F.3d 203, 207 (5th Cir. 2012) (*quoting United States v. Guerrero–Barajas,* 240 F.3d 428, 432 (5th Cir. 2001)).

### IV
### Analysis

In analyzing Booker's motion to suppress, it is important to clarify what is at issue. There is no dispute that, at the time the officers seized Booker's gun and detained him, Booker was subjected to a search and seizure within the meaning of the Fourth Amendment. There is also no dispute that the search and seizure, which was based on the officer's knowledge of

---

[4] The Government stated that it had no objection to the video being admitted as evidence at the point when it was offered; however, later in the hearing, the Government objected to the video to the extent Defendant relied on its entirety. The Court overruled the objection as waived.

3

Booker's criminal history and Booker's admission that he was carrying a gun, was supported by probable cause to believe that Booker had committed the crime of being a felon in possession of a firearm. The determinative issue here is whether the admission which provided probable cause for the search and seizure was properly obtained.

To this end, Booker argues that he made the admission while subject to an unlawful *Terry* stop. Specifically, Booker contends that the gun, "which was allegedly recovered ... by law enforcement officers based upon an anonymous and uncorroborated tip, should be suppress [sic] for the law enforcement officers lacked reasonable suspicion to make a Terry stop." Doc. #12 at 1. The Government responds that the encounter was not a *Terry* stop but a consensual encounter and that, even if the interaction could be deemed a *Terry* stop, the officers had reasonable suspicion to stop Booker. Doc. #14.

### A. Consensual Encounter

"There are three recognized types of encounters between law enforcement officers and citizens[:] 1) a consensual encounter during which an individual voluntarily agrees to communicate with the police; 2) a limited investigatory [*Terry*] stop based upon less than probable cause; and 3) an arrest which constitutes a seizure under the Fourth Amendment." *United States v. Williams*, 365 F.3d 399, 403–04 (5th Cir. 2004). "Under the consensual encounter arm of Fourth Amendment jurisprudence, the police can initiate contact with a person without having an objective level of suspicion, during which time the police may ask questions of the person, ask for identification, and request permission to search baggage that the individual may have in his possession." *Id*. at 404.

In assessing whether an encounter was consensual, a court must decide whether a seizure occurred. *See generally Florida v. Royer*, 460 U.S. 491, 498 (1983) (seizures and *Terry* stops are

seizures under Fourth Amendment). "The test for whether a seizure occurred is necessarily imprecise because it seeks to measure the coercive effect of police conduct when viewed as a whole." *United States v. Mask*, 330 F.3d 330, 337 (5th Cir. 2003). To determine whether an encounter was consensual rather than a seizure, a court should consider: "(1) the threatening presence of several police officers; (2) the display of a weapon by an officer; (3) physical touching of the person of the citizen; and (4) the use of language or tone of voice indicating that compliance with an officer's request was compelled." *United States v. Guevara*, 448 F. App'x 453, 456 (5th Cir. 2011) (quoting *Mask*, 330 F.3d at 337).

Although the Fifth Circuit appears to have not addressed the issue, other circuits have held that the burden of showing a consensual encounter rests with the Government. *See United States v. Preston*, 579 F. App'x 495, 501 (6th Cir. 2014) ("A person is not seized if the interaction is consensual, but it is the government's burden to establish that the interaction was consensual."); *United States v. Jordan*, 635 F.3d 1181, 1186 (11th Cir. 2011) ("The government bears the burden of proving voluntary consent based on a totality of circumstances.").[5] The Court, therefore, assumes without deciding that the Government bears the burden of establishing that Booker's encounter with the officers was consensual.

Here, the encounter with Booker involved three officers. The officers' weapons, though visible, remained holstered throughout the encounter. The officers did not search Booker until Booker admitted to possessing a gun. And, though contested by the parties, the language used by the officers, which the Court finds was phrased in questions and not demands, did not suggest that compliance with the officers' requests was required. Courts have routinely deemed similar encounters to be consensual. *See United States v. Ardoin*, No. 10-29, 2010 WL 4056191, at *4

---

[5] *But see United States v. Jones*, 142 F.Supp.3d 49, 56 n.4 (D.D.C. 2015) ("It is not clear whether a defendant bears an initial burden to show that a search or seizure took place in such circumstances.").

(M.D. La. Oct. 14, 2010) (consensual encounter where six officers present during encounter did not touch defendant, kept their weapons holstered, and did not speak "in a hostile or coercive manner"); *United States v. Scott*, No. 3:08-cr-134, 2015 WL 4506864, at *3 (S.D. Miss. July 24, 2015) (no seizure where "five or six … officers" present did not draw their weapons, did not touch defendant, and did not speak in a "language [or] tone [which] conveyed the need for compelled compliance"). Under these circumstances, the Court concludes that, before Booker's admission of having a gun and the subsequent search, Booker's encounter with the Clarksdale police officers was consensual.[6]

## B. *Terry* Stop

Under the rule of *Terry v. Ohio*, 392 U.S. 1 (1968), "if a law enforcement officer can point to specific and articulable facts that lead him to reasonably suspect that a particular person is committing, or is about to commit a crime, the officer may briefly detain – that is, 'seize'– the person to investigate." *United States v. Hill*, 752 F.3d 1029, 1033 (5th Cir. 2014) (citing *United States v. Jordan*, 232 F.3d 447, 448 (5th Cir. 2000)). Thus, "[u]nder *Terry*, an officer may stop and question an individual suspected of criminal activity even though the officer had no probable cause to make an arrest." *United States v. Landry*, 903 F.2d 334, 337 (5th Cir. 1990). "In determining whether the officer's suspicion, as based on specific and articulable facts, was reasonable, the totality of the circumstances must be considered." *Hill*, 752 F.3d at 1033. "The

---

[6] At the evidentiary hearing, Booker's counsel argued that the interaction was not a consensual encounter because the officers did not inform Booker that he was not under arrest and did not inform him "that he could refuse their request to ... a search of his person." This argument appears to conflate the consensual encounter inquiry with the inquiry into whether a consent to search was valid. *See generally United States v. Samuels*, 628 F. App'x 322, 322–23 (5th Cir. 2016) (in considering voluntariness of consent to search, courts consider "(1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found.") (citing *United States v. Jenkins*, 46 F.3d 447, 451 (5th Cir. 1995)).

government has the burden of proving the specific and articulable facts that support the reasonableness of the suspicion." *Id.*

In his motion, Booker argues that the encounter was not a *Terry* stop because the officers lacked reasonable suspicion to detain him. Doc. #12 at 2. His counsel reiterated the argument at hearing, submitting that the officers lacked reasonable suspicion because "[t]he only information they had was an anonymous tip, the reliability of which they never investigated or attempted to investigate." The Government responds that the anonymous tip, coupled with the officers' knowledge of Booker's conviction history, provided reasonable suspicion to effectuate a *Terry* stop. Doc. #14 at 7–8.

"Anonymous tips may provide the reasonable suspicion necessary to justify an investigatory stop." *United States v. Perkins*, 352 F.3d 198, 199 (5th Cir. 2003). Where an anonymous tip is at issue, the Fifth Circuit has followed a two-step approach for determining whether the tip provided the requisite reasonable suspicion. *See United States v. Gomez*, 623 F.3d 265, 269 (5th Cir. 2010). First, a court should ask whether, under the relevant factors for confidential informants, the tip provided reasonable suspicion. *Id.* If the tip satisfies this multi-factor test, a court must then ask "whether the 'anonymous' nature of [the tip would] preclude[] the ... court from holding that the officers had a reasonable suspicion sufficient to justify the stop." *Id.* at 269–70.

### 1. Multi-Factor Test

"[R]easonable suspicion can be 'based on information provided by a confidential informant, if the information possesses an indicia of reliability.'" *United States v. Ardoin*, 454 F. App'x 385, 387 (5th Cir. 2011) (quoting *United States v. Roch*, 5 F.3d 894, 898 (5th Cir. 1993)). "Factors to be considered are: (1) the credibility and reliability of the informant; (2) the

7

specificity of the information contained in the tip; (3) the ability of the officers in the field to verify the information; and (4) whether the tip deals with active or recent activity." *United States v. Bolden*, 508 F.3d 204, 206 n.2 (5th Cir. 2007) (internal quotation marks and alterations omitted). If, as in this case, "a tip is provided by an anonymous informant, such that the informant's credibility and reliability cannot be determined, the Government must establish reasonable suspicion based on the remaining factors." *Gomez*, 623 F.3d at 269.

Here, the anonymous caller provided specific information – Booker's name and location, the model of the car Booker was driving, and a specific allegation that Booker was carrying a firearm. The high degree of specificity in the anonymous call satisfies the specificity factor of the inquiry. *See Gomez*, 623 F.3d at 269 ("[The caller] provided an extraordinary amount of detail in his call—a description of open criminal activity including the coloring of the weapon involved; the location of that activity, details about the suspect's race, age, and weight; the make, model, and license plate number of the suspect's vehicle; and the race and gender of other passengers in the vehicle."). Furthermore, the officers were able to verify the bulk of the information, including Booker's identity and location as well as the presence of Booker's car. *See id*. ("Officers were subsequently able to verify a number of these claims including all of the vehicle information, the race and gender of the other passengers, and, to an extent, the location, as the car was stopped headed away from the gas station only a few short minutes after [the] call."). Finally, the anonymous tip concerned ongoing conduct—the carrying of a firearm. Upon consideration of all such matters, the Court concludes that these indicia of reliability, in conjunction with the officer's independent, verified knowledge that Booker could not legally carry a firearm, satisfy the Fifth Circuit's multi-factor reasonable suspicion test.

### 2. Anonymous Nature of the Tip

Beyond the Fifth Circuit's factors, the United States Supreme Court has issued three opinions which guide the inquiry into the reliability of an anonymous tip.

In *Alabama v. White*, a police department received an anonymous tip that the defendant "would be leaving [a specific address] at a particular time in a brown Plymouth station wagon with the right taillight lens broken, that she would be going to [a nearby motel], and that she would be in possession of about an ounce of cocaine inside a brown attaché case." 496 U.S. 325, 327 (1990). The officers proceeded to the listed address, observed the defendant enter a brown Plymouth station wagon with a broken taillight and then drive "the most direct route" to the identified motel. *Id.* The officers stopped the car just short of the motel, received permission from the defendant to search the car, and discovered cocaine. *Id.* Although deeming it a "close case," the United States Supreme Court, found "sufficient indicia of reliability to justify the investigatory stop." *Id*. at 332. In reaching this conclusion, the Supreme Court noted that "[w]hat was important was the caller's ability to predict respondent's *future behavior*, because it demonstrated inside information – a special familiarity with respondent's affairs." *Id*. (emphasis in original).

In *Florida v. J.L.*, an anonymous caller reported to a police department "that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun." 529 U.S. 266, 268 (2000). Officers proceeded to the bus stop and noticed a young African American male wearing a plaid shirt. The officers, who did not see a firearm or observe any unusual movements, then frisked the male, J.L, and discovered a handgun. *Id*. J.L., a minor, was then charged under state law for carrying a concealed firearm without a license and possessing a firearm while under the age of 18. *Id*. at 269. J.L. challenged the search. Upon review, the

United States Supreme Court held that the stop was unsupported by reasonable suspicion because the tip did not specifically identify criminal activity and because "[a]ll the police had to go on ... was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L." *Id*. at 271.

Most recently, in *Navarette v. California*, a police department received an anonymous 911 call stating that a "Silver Ford 150 pickup. Plate of 8-David-94925. Ran the reporting party off the roadway and was last seen approximately five [minutes] ago." 134 S.Ct. 1683, 1686–87 (2014). The caller identified the road and direction the truck was traveling. *Id*. at 1686. The officers proceeded to the identified road and stopped the identified truck. *Id*. at 1687. During the stop, the officers smelled marijuana, conducted a search of the truck, and discovered thirty pounds of the drug. *Id*. The driver of the car challenged the stop. The Supreme Court found the stop to have been supported by reasonable suspicion. *Id*. at 1688–89. In concluding such, the Court found the following indicia of reliability: (1) "[b]y reporting that she had been run off the road by a specific vehicle ... the caller necessarily claimed eyewitness knowledge of the alleged dangerous driving [which suggested] a basis of knowledge [of illegal activity;]" (2) the "timeline of events suggest[ed] that the caller reported the incident soon after she was run off the road;" and (3) the caller used the 911 emergency system which "has some features that allow for identifying and tracing callers." *Id*. at 1689–90.

Read together, these cases stand for the proposition that an anonymous tip must provide a basis of knowledge of criminal activity. Where, as here, an anonymous tip is not based on an eye witness observation of the caller, the tip will normally supply reasonable suspicion only if

10

"the tipster had inside information about the defendant or the concealed criminal activity." *Parker v. Chard*, 777 F.3d 977, 981 (8th Cir. 2015).

In contemplating the facts of this case, the Court initially notes that the caller displayed some level of "inside information" about Booker by specifically identifying Booker by name, Booker's location, and the presence of Booker's automobile. Furthermore, the officers here had independent knowledge that Booker's possession of a firearm would be illegal. Thus, unlike *J.L.*, this is not a case where "[a]ll the police had to go on ... was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied *any basis* for believing he had inside information about J.L." 529 U.S. at 271 (emphasis added); *see United States v. Wade*, 551 F. App'x 546, 548 (11th Cir. 2014) ("[T]he caller provided corroboration for his tip by identifying [defendant] by name."). However, unlike *White*, this information was not predictive in nature and was, therefore, of a lesser degree of reliability.

Upon consideration of the facts here against the Supreme Court precedent discussed above, the Court concludes that this case is closer to *White* than *J.L.* In both *White* and this case, the officers received an anonymous tip specifically identifying a defendant by name, illegal conduct by the defendant,[7] and the defendant's vehicle. While this case lacks the "important" predictive quality of *White*, 496 U.S. at 332; the timeline of events (the identification of Booker at a transient location) suggests that, as in *Navarette*, the caller made the report soon after the alleged observation, 134 S.Ct. at 1689. Under these circumstances, while a close call, the Court concludes that the anonymous nature of the call does not preclude a finding of reasonable suspicion.

---

[7] As explained above, the officers had independent knowledge about Booker's status as a felon. Accordingly, the officers knew that Booker could not legally possess a firearm.

11

## V
## Conclusion

For the reasons above, Booker's motion to suppress [12] is **DENIED**.

**SO ORDERED**, this 28th day of December, 2016.

/s/ Debra M. Brown
**UNITED STATES DISTRICT JUDGE**